**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

John Simones,

               Plaintiff,

               v.

The Jerde Partnership, Inc.

Supplemental Executive

Retirement Plan et al,

               Defendants.

Case No. 2:21-cv-08265-VAP-KESx

**Order GRANTING Defendants' Motion to Dismiss IN PART (Dkt. 19)**

Before the Court is Defendants the Jerde Partnership, Inc. Supplemental Executive Retirement Plan, Committee of the Jerde Partnership, Inc. Supplemental Executive Retirement Plan, and the Jerde Partnership, Inc.'s ("Defendants") Motion to Dismiss First Amended Complaint ("Motion," Dkt. 19).

After considering all the papers filed in support of, and in opposition to, the Motion, the Court **GRANTS** the Motion **IN PART.**

## I.     BACKGROUND

On October 29, 2021, John Simones ("Plaintiff") filed suit against Defendants for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and related breach of contract claims.  On November 10,

United States District Court
Central District of California

United States District Court
Central District of California

1   2021, Plaintiff filed a First Amended Complaint ("FAC") alleging four claims:

2   1) Failure to Pay Benefits Due (ERISA); 2) Equitable Estoppel (ERISA); 3)

3   Breach of Contract; and 4) Breach of Good Faith and Fair Dealing.  (Dkt.

4   16).

5

6   The FAC alleges that Plaintiff was a long serving executive at Jerde

7   and a participant in the Jerde Partnership, Inc. Supplemental Executive

8   Retirement Plan (the "Plan").  (FAC, at 2).  Plaintiff worked for Jerde for

9   more than 36 years, and previously served as the Chairman of the Board

10  and Chief Executive Officer of the company.  (*Id.*).

11

12  The Plan is a "top-hat plan" that provides post-retirement income to

13  senior executives at Jerde.  (Id. at 3).  Jerde is the Plan sponsor and the

14  administrator of the Plan.  (*Id.*).  The Committee of the Jerde Partnership,

15  Inc. Supplemental Executive Retirement Plan (the "Committee") is

16  responsible for administration of various terms of the plan.  (*Id.*).  The terms

17  of the plan are governed by an agreement (the "Plan Agreement"), adopted

18  as of May 1, 2016.  (*Id.*).

19

20  Plaintiff alleges the following facts in connection with the alleged

21  deprivation of his retirement benefits.  Plaintiff announced his retirement in

22  June 2020.  (*Id.* at 3).  At that time, Jerde executives told him that his

23  benefits under the plan would be $3,133,668.  (*Id.* at 4).  Jerde's Board of

24  Directors also passed a resolution on July 17, 2020, confirming that

25  Plaintiff's benefits were $3,133,668, based on Jerde's official 2019 Balance

26  Sheet produced by Jerde's outside accountants.   (*Id.* at 8).  Nevertheless,

1    in late August 2020, Jerde executives, including Paul Martinkovic and

2    Tammy Poulous, held a shareholder meeting at which they sought to have

3    the company's 2019 financial statements reopened and reviewed.  (*Id*. at 9-

4    10).  At Martinkovic's direction, Jerde produced new financial statements in

5    November 2020, which included a different calculation of the company's

6    liabilities using a new accounting method.  (*Id.* at 11).  The revised financial

7    statement added a liability for "accrued retirement benefits" in the amount of

8    over $4 million dollars.  (*Id.*).  No liability for "accrued retirement benefits"

9    had been included in any financial statement since the execution of the

10   Plan.  (*Id.*).   The addition of a new liability would reduce the calculation of

11   Plaintiff's retirement benefits.  (*Id.* at 12).

12

13        Jerde executives did not use the revised 2019 statements to calculate

14   Plaintiff's benefits, but instead used 2020 financial statements that were also

15   produced using the new accounting method (including liabilities for accrued

16   retirement benefits).  (*Id.* at 12-13).  Ultimately, Jerde calculated Plaintiff's

17   retirement benefits as being $2,090,037.  (*Id.* at 10-11).  Plaintiff disputed

18   the recalculation of his benefits as required under the dispute resolution

19   provisions of the Plan, and eventually exhausted his administrative

20   remedies.  (*Id.* at 18-19).

21

22        Plaintiff claims he has been deprived of $1,043,631 of his benefits, in

23   violation of ERISA Section 502(a)(1)(B) or 29 U.S.C. Section 1132(a)(1)(B).

24   He further contends that Defendants are equitably estopped from asserting

25   that he is not entitled to those benefits under 29 U.S.C. Section 1132(a)(3).

26   Plaintiff's central allegation is that Defendants have changed positions on

United States District Court
Central District of California

1   how his benefits are calculated under the Plan in order to deprive him of

2   benefits.  *See* FAC at 2.

3

4      Plaintiff also brings a separate claim alleging that members of the

5   Board conspired against him to deprive him of a bonus in 2020.  Specifically,

6   he alleges that his annual compensation since 2016 consisted primarily of

7   bonuses.  (*Id.*at 22).  In November 2020, Plaintiff alleges that members of

8   the Compensation Committee of the Board—Martinovic and Mr. Mark Liu—

9   voted against distributing bonuses because they were motivated by a desire

10  to deprive Plaintiff of his bonus.  (*Id.* at 22).  These allegations form the

11  basis of Plaintiff's Breach of Contract and Breach of Implied Covenant of

12  Good Faith and Fair Dealing claims against Jerde Partnership, Inc., for

13  which Plaintiff is seeking $680,000.  (*Id.* at 22-23).

14

15     On November 30, 2021, Defendants filed the instant Motion seeking

16  to dismiss three out of four of Plaintiff's claims, for Equitable Estoppel,

17  Breach of Contract, and Breach of the Implied Covenant of Good Faith and

18  Fair Dealing.  (Dkt. 19).  Plaintiff filed an Opposition on December 17, 2021.

19  (Opposition, "Opp'n," Dkt. 21).  Defendants filed a Reply on December 27,

20  2021.  (Reply, Dkt. 22).

21

22                    **II.    LEGAL STANDARD**

23  **A.    Motion to Dismiss Under Rule 12(b)(6)**

24     Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a mo-

25  tion to dismiss for failure to state a claim upon which relief can be granted.

26  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain

United States District Court
Central District of California

1  statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P.

2  8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal

3  Rules require a plaintiff to provide "'a short and plain statement of the claim'

4  that will give the defendant fair notice of what the plaintiff's claim is and the

5  grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell Atl.*

6  *Corp. v Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule

7  12(b)(6) motion, a court must accept all material allegations in the com-

8  plaint—as well as any reasonable inferences to be drawn from them— as

9  true and construe them in the light most favorable to the non-moving party.

10 *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecol-*

11 *ogy v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v.*

12 *Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as

13 true, however, allegations that contradict facts that may be judicially noticed

14 by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

15

16      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

17 does not need detailed factual allegations, a plaintiff's obligation to provide

18 the 'grounds' of his 'entitlement to relief' requires more than labels and con-

19 clusions, and a formulaic recitation of the elements of a cause of action will

20 not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allega-

21 tions in the complaint "must be enough to raise a right to relief above the

22 speculative level."  (*Id.*).  To survive a motion to dismiss, a plaintiff must al-

23 lege "enough facts to state a claim to relief that is plausible on its face."

24 *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).

25 "The plausibility standard is not akin to a 'probability requirement,' but it

26 asks for more than a sheer possibility that a defendant has acted unlawfully.

United States District Court
Central District of California

1  Where a complaint pleads facts that are 'merely consistent with' a defend-

2  ant's liability, it stops short of the line between possibility and plausibility of

3  'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

4  556).

5

6  The Ninth Circuit has clarified that: (1) a complaint must "contain suffi-

7  cient allegations of underlying facts to give fair notice and to enable the op-

8  posing party to defend itself effectively" and (2) "the factual allegations that

9  are taken as true must plausibly suggest an entitlement to relief, such that it

10  is not unfair to require the opposing party to be subjected to the expense of

11  discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

12  Cir. 2011). Although the scope of review is limited to the contents of the

13  complaint, the Court may also consider exhibits submitted with the com-

14  plaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

15  1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public rec-

16  ord outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,

17  649 (9th Cir. 1988).

18

19  ### III.  DISCUSSION

20  **A.  Equitable Estoppel**

21  Defendants contend that Plaintiff's equitable estoppel claim should be

22  dismissed because it fails to address the required legal elements. (Motion,

23  at 9). Plaintiff responds that he has properly pleaded the elements of

24  equitable estoppel. (Opp'n, at 5).

25

26

United States District Court
Central District of California

1   The Ninth Circuit has explained that, "[e]quitable estoppel applies if

2   the party to be estopped knew the facts and intended for his conduct to be

3   acted on, and if the party asserting estoppel was ignorant of the true facts

4   and relied on the other party's conduct to her injury."  *Wong as Tr. of*

5   *Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*, 999 F.3d 1205,

6   1211 (9th Cir. 2021).  As Plaintiff points out, the *Wong* court also articulated

7   the elements required to plead an equitable estoppel claim under ERISA:

8           In addition to satisfying the traditional equitable estoppel

9           requirements, a party bringing a federal equitable estoppel

10          claim in the ERISA context must also allege: "(1) extraor-

11          dinary circumstances; (2) that the provisions of the plan at

12          issue were ambiguous such that reasonable persons

13          could disagree as to their meaning or effect; and (3) that

14          the representations made about the plan were an interpre-

15          tation of the plan, not an amendment or modification of the

16          plan." (*Id.* at 1212) (citation omitted).

17

18          The Court agrees with Plaintiff that he has sufficiently pled a claim for

19   equitable estoppel.  Plaintiff has alleged that Defendants knew and

20   represented that his retirement benefits would be $3,133,668; that he did

21   not know Defendants would change his benefit calculation, and he then

22   chose to retire at his detriment; that the decrease in benefits he received,

23   $1,043,631, constitutes an extraordinary circumstance; that the provision of

24   the plan related to calculating the company's financial statements and

25   benefits was ambiguous; and that Defendants' recalculation of Plaintiff's

26   benefits was based on their interpretation of the plan.  (*See* Opp'n, 5-6).

United States District Court
Central District of California

1

2        Defendants also argue that Plaintiff's equitable estoppel claim fails

3  because he alleged that there had been a *written* misrepresentation of the

4  plan, and not an *oral* misrepresentation.  Defendants argue that Ninth

5  Circuit precedent, including cases such as *Wong* and *Greany v. Western*

6  *Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir. 1992), requires an

7  equitable estoppel claim to be based on an oral misrepresentation.

8

9        The Court disagrees with Defendants' readings of *Wong* and *Greany*

10 as limiting equitable estoppel claims in this manner.  *Greany,* a 1992 case,

11 did state that pleading an equitable estoppel claim under ERISA involves

12 "representations [that] are made to the employee involving an oral

13 interpretation of the plan."  973 F.2d at 821.  Yet in *Wong*, a more recent

14 case decided in 2021, the Ninth Circuit did not expressly adopt the language

15 holding that a misrepresentation must be "oral" to suffice.  Moreover, as

16 another court in this District has pointed out, the Ninth Circuit has previously

17 allowed equitable estoppel claims to proceed based on written

18 representations alone.  In *Bolton v. Constr. Laborers' Pension Trust for S.*

19 *Cal.*, "the Ninth Circuit affirmed the district court's finding that equitable

20 estoppel properly applied in an ERISA case where the representations that

21 were at issue were in writing rather than oral."  *Est. of Weis v. Kimberly*

22 *Clark Corp.*, No. SA-CV-09-01089-CJC, 2011 WL 1815147, at *4 (C.D. Cal.

23 May 2, 2011) (citing *Bolton v. Constr. Laborers' Pension Trust for S. Cal.*,

24 954 F.2d 1437, 1438–39 (9th Cir.1991)).

25

26

1    The Court agrees with *Kimberly Clark Corp.*'s interpretation that

2    written misrepresentations are sufficient to plead an equitable estoppel

3    claim.  Indeed, as that court pointed out, it is hard to imagine "a rationale

4    that would justify such a distinction between oral and written

5    representations," because "[i]f anything, estoppel claims involving written

6    representations should be preferred given that [they] provide more reliable

7    evidence of a defendant's alleged conduct.  (*Id.* at *4).  The Court therefore

8    concurs with Plaintiff's position set forth in Opposition, and finds that Plaintiff

9    has adequately pleaded an equitable estoppel claim under ERISA.

10

11    Defendants' Motion to Dismiss the Equitable Estoppel Claim is

12    **DENIED.**

13

14    **B.   Breach of Contract**

15    Defendants next move to dismiss Plaintiff's breach of contract claim

16    pertaining to Jerde's alleged failure to award discretionary bonuses in 2020.

17    Defendants contend that the FAC lacks sufficient allegations that there was

18    an agreement between Defendants and Plaintiff to distribute bonuses to

19    Jerde's shareholders.  Plaintiff responds that he has properly pleaded facts

20    suggesting there was an "implied-in-fact" contract.

21

22    Under California law, a "contract implied in fact 'consists of obligations

23    arising from a mutual agreement and intent to promise where the agreement

24    and promise have not been expressed in words.'"  *O'Connor v. Uber Techs.,*

25    *Inc.*, 58 F. Supp. 3d 989, 999 (N.D. Cal. 2014) (citations omitted).  In other

26    words, "[c]ontracts are implied in fact where the parties' actions evince an

9

1  intention to create a binding contract." *Design Data Corp. v. Unigate Enter.*,

2  Inc., No. C 12-4131 PJH, 2013 WL 360542, at *5 (N.D. Cal. Jan. 29, 2013)

3  (citing *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953)).

4

5  Here, Plaintiff has alleged that: 1) Jerde would pay bonuses to its

6  shareholders if the company had more than $2 million in cash as of

7  November of each year; 2) Jerde had more than $2 million in cash as of

8  November 2020, but Board members voted not to pay any bonuses; and 3)

9  Plaintiff was harmed by the breach of this implied contract.  (Opp'n, at 7).

10

11  The Court agrees with Defendants that Plaintiff has failed to state a

12  plausible claim for breach of contract.  As Defendants point out, Plaintiff has

13  failed to provide specific facts supporting the existence of any agreement by

14  Defendants to distribute bonuses to shareholders.  Although Plaintiff alleges

15  that the Board "routinely voted to distribute bonuses in years that the

16  Company [had more than $2 million dollars in cash]," this does not suggest

17  that there was an implied contractual agreement to provide such bonuses.

18  Notably, Plaintiff acknowledges that the decision to award bonuses was

19  subject to a vote by the Compensation Committee—this fact cuts strongly

20  against Plaintiff's claim, as it suggests the Company had discretion over

21  bonuses and could decline to award them for any number of reasons.

22  (FAC, at 22-23).  Moreover, Plaintiff's assertion that members of the

23  Compensation Committee voted against bonuses in order to deprive him of

24  his bonus is speculative, given that the Committee members also deprived

25  themselves of bonuses in the process.  (FAC, at 22).  As it stands, Plaintiff's

26  allegations are conclusory and implausible.  *See, e.g., Haskins v. Symantec*

United States District Court
Central District of California

United States District Court
Central District of California

1 | *Corp.*, No. 13-CV-01834-JST, 2013 WL 6234610, at *10 (N.D. Cal. Dec. 2,

2 | 2013) (dismissing a breach of contract claim where the complaint "fail[ed] to

3 | paint a clear picture of the alleged contract's terms").

4

5 |      The Court **DISMISSES** the Breach of Contract claim **WITH**

6 | **LEAVE TO AMEND.**

7

8 |    **C.**   **Breach of the Implied Covenant of Good Faith and Fair Dealing**

9 |      Defendants move to dismiss Plaintiff's fourth claim, breach of the

10 | implied covenant of good faith and fair dealing, on the grounds it is

11 | superfluous to the breach of contract claim.  (Motion, at 13).  Plaintiff

12 | responds that the two claims involve slightly different allegations.  (Opp'n, at

13 | 9).

14

15 |      "It is a well settled proposition that the law implies in every contract a

16 | covenant of good faith and fair dealing." *In re Marriage of Corona*, 172 Cal.

17 | App. 4th 1205, 1220 (2009).  "The covenant creates a duty of good faith and

18 | fair dealing in a contract's performance and enforcement." (*Id.*).

19

20 |      The Court finds that Plaintiff's fourth claim fails because he has failed

21 | to plausibly allege that an implied contract existed at all.  The breach of

22 | good faith claim is dependent on the existence of an underlying contract,

23 | and as expressed in Section III(B) *supra,* Plaintiff has not alleged sufficient

24 | facts to establish that Defendants had a contract to award bonuses to

25 | shareholders.  Therefore, Plaintiff also has failed to state a claim for breach

26 | of the implied covenant of good faith and fair dealing.

The Court **DISMISSES** Plaintiff's fourth claim **WITH LEAVE TO AMEND.**

## IV.   CONCLUSION

The Court therefore **GRANTS** Defendants' Motion to Dismiss **IN PART.**  The Court **DENIES** Defendants' Motion to Dismiss the Equitable Estoppel claim.  The Court **DISMISSES** Plaintiff's claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing **WITH LEAVE TO AMEND.**  Any amended complaint shall be filed no later than February 1, 2022.

**IT IS SO ORDERED.**

Dated:   1/19/22

Virginia A. Phillips
United States District Judge